UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOHAMED SANUSI BARRIE,

                    Petitioner,

        v.                                                        20-CV-171
                                                                  Decision & Order
WILLIAM BARR, United States Attorney
General, et al.,

                    Respondents.

_____

        Mohamed Sanusi Barrie has been detained in United States Immigration and

Customs Enforcement custody since October 29, 2018—nearly 18 months.  Docket

Item 4-1 at 4.  On February 7, 2020, Barrie filed a *pro se* petition for a writ of habeas

corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo

Federal Detention Facility in Batavia, New York.  Docket Item 1.  On March 31, 2020,

the respondents answered the petition, Docket Item 4; and on April 14, 2020, Barrie

replied, Docket Item 9.

        For the reasons that follow, this Court grants Barrie's petition in part.

## **FACTUAL AND PROCEDURAL BACKGROUND**

        The following facts, taken from the record, come largely from filings with the

United States Department of Homeland Security, Immigration and Customs

Enforcement ("DHS").

Barrie is a native and citizen of Sierra Leone.  *See* Docket Item 1 at 4; Docket Item 4-1 at 2.  He was admitted to the United States as an asylee on February 5, 2000.  Docket Item 1 at 4; Docket Item 4-1 at 2.

Barrie has been found guilty of an assortment of criminal offenses since his arrival in the United States.  *See* Docket Item 4-1 at 2-3.  As relevant here, on October 29, 2014, Barrie was convicted in the Circuit Court of Putnam County, West Virginia, of fraudulent use of an unauthorized access device, a felony, and sentenced to ten years' imprisonment, Docket Item 4-2 at 8-11; and on February 17, 2017, Barrie pleaded guilty in New York State Supreme Court, Manhattan County, to criminal possession of a forged instrument in the second degree, also a felony, and was sentenced to two to four years' imprisonment, *id.* at 21.

By letter dated October 11, 2018, the United States Citizenship and Immigration Services informed Barrie that it intended to terminate his asylum status.  *See id.* at 3; Docket Item 4-2 at 33.  On October 18, 2018, DHS served Barrie with a "Notice to Appear," charging that he was subject to removal from the United States under 8 U.S.C. §§ 1101(a)(43)(R) and 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony—namely, his 2017 forgery conviction.  *See id.* at 28.

On October 18, 2018, DHS issued a warrant for Barrie's arrest and lodged a detainer with the Lakeview Correctional Facility, where he was being held in the custody of New York State.  *Id.* at 36, 38.  On October 29, 2018, Barrie was released from state custody and taken into DHS custody.  Docket Item 4-1 at 4.  On October 30, 2018, DHS issued a "Notice of Custody Determination," informing Barrie that he would be detained

by DHS "pending a final administrative determination in [his] case."  Docket Item 4-2 at 41.

On December 17, 2018, Barrie appeared before an Immigration Judge ("IJ") for an asylum termination hearing.  *Id.* at 42.  He requested an adjournment so that he could retain counsel, and the IJ granted his request.  *Id.*  Barrie subsequently, through counsel, requested two more adjournments to prepare applications for relief from removal.  *See id.* at 43-44.  On March 20, 2019, the IJ heard argument on Barrie's applications for relief.  *Id.* at 47.  On May 10, 2019, the IJ granted Barrie's motion for an extension of time to submit evidence in support of his application.  *Id.* at 50.  The IJ again heard argument—including testimony from Barrie's sister and mother—on May 23, 2019, and on September 17, 2019.  *Id.* at 51.  One intervening hearing date, July 25, 2019, was rescheduled by the IJ to accommodate other pending matters.  Docket Item 4-1 at 6.  On September 17, 2019, DHS amended its removal notice to charge that Barrie also was subject removal under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude—namely, his 2014 fraud and 2017 forgery convictions.  *See id.* at 52.

On December 11, 2019, the IJ denied Barrie's applications for relief from removal and ordered him removed to Sierra Leone.  *Id.* at 54-71.  Barrie currently has an appeal pending before the Board of Immigration Appeals ("BIA") and remains in DHS custody at the Buffalo Federal Detention Facility awaiting the BIA's decision.  *Id.*  Docket Item 4-1 at 6.  Barrie has been in DHS custody for nearly 18 months.

## DISCUSSION

### I. HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3). The government maintains that Barrie is validly detained under 8 U.S.C. § 1226(c) as an alien convicted of committing two crimes of moral turpitude pending removal proceedings. Docket Item 4 at 1.

Barrie disagrees on three grounds. First, he contends that his detention for over six months is "unlawful and contravenes 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas* [*v. Davis*, 533 U.S. 678, 701 (2001)]." Docket Item 1 at 12. The Court construes Barrie's first claim as arguing that his continued detention violates 28 U.S.C. § 1231(a)(6) because there is "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future."[1] *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Second, Barrie argues that his "indefinite" detention violates his right to substantive due process under the Fifth Amendment of the United States Constitution. Docket Item 1 at 13. And third, he argues that his detention without "a timely and meaningful opportunity to demonstrate that [he] should not be detained" violates his right to "procedural due process" under the Fifth Amendment of the United States Constitution. *Id.*

---

[1] Because Barrie is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## II. STATUTORY CHALLENGE

Barrie first argues that his detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. at 701.  *See* Docket Item 1 at 12.  But Barrie is detained under section 1226(c), which applies to aliens as to whom a final order of removal has not yet been entered, not section 1231.  *See* Docket Item 4 at 1. Because Barrie is not detained under section 1231(a), this Court rejects his argument that his detention violates that provision as interpreted by the Supreme Court in *Zadvydas*.

## III. DUE PROCESS

Barrie also alleges that his continued detention violates the Due Process Clause. *See* Docket Item 1 at 13.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty."  *Id.* (citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id.* "This requirement has traditionally been referred to as 'procedural' due process."  *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.  "[G]overnment detention violates that Clause unless the

detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (emphasis in original) (citations omitted).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."  *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

## A.   Substantive Due Process

Barrie argues that his detention violates his right to substantive due process.  Docket Item 1 at 13.  He has been in DHS custody since October 29, 2018—nearly 18 months.  *See* Docket Item 4-1 at 4.  But this Court cannot say that detention that long

violates due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004)

(summary order) (determining that six-year detention did not violate due process).

Indeed, detention under section 1226 may serve the government's compelling interests

in both "preser[ving] the government's ability to later carry out its broader responsibilities

over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991),

and preventing crime by arrestees who pose a danger to the safety of the community,

*see Salerno*, 481 U.S. at 749.  Although there comes a time when the length of an

alien's detention pending removal violates due process regardless of the procedural

protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

### B.    Procedural Due Process

Barrie also challenges the procedural safeguards that apply to his continued

detention.  Docket Item 1 at 13.  The Due Process Clause is not offended by the

mandatory detention of aliens without a hearing for the "*brief period necessary* for . . .

removal proceedings."  *Demore*, 538 U.S. at 513 (emphasis added).  But "a lawful

permanent resident alien . . . could be entitled to an individualized determination as to

his risk of flight and dangerousness if the continued detention became unreasonable or

unjustified."  *Id.* at 532 (Kennedy, *J.*, concurring).  Although Barrie's application to

register as a lawful permanent resident was denied in 2008, *see* Docket Item 4-2 at 24,

there is no dispute that he entered and has largely remained in this country legally for

nearly twenty years, *see, e.g.*, *id.*  So while Barrie's Fifth Amendment rights may be less

than those of a lawful permanent resident, they are not substantially so, and they

certainly are sufficient to afford him procedural protection against unreasonably

prolonged detention.  "[T]he Due Process Clause applies to all 'persons' within the

United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.  *Zadvydas*, 533 U.S. at 693 (citations omitted).

"In light of the substantial uncertainty surrounding the detention provisions in [s]ection 1226(c)," *Hechavarria*, 891 F.3d at 58, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry," *Hemans*, 2019 WL 955353, at *5.  "A[t] the first step, the Court considers whether the alien's detention has been unreasonably prolonged."  *Id.*  "If it has not, then there is no procedural due process violation."  *Id.*  "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors."  *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process."  *Id.*

### 1.    Barrie's Detention

"The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances."  *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (cited in *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018)).  "[W]hen weighing the lawfulness of continued detention of an alien under the Due Process Clause," several factors determine whether detention is unreasonably prolonged.  *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019).  This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal."  *Hemans*, 2019 WL 955353, at *6.

8

First, and most important, courts consider the length of detention.  Barrie has been in DHS custody since October 29, 2018—nearly 18 months.  *See* Docket Item 4-1 at 4.  "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing."  *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein).  In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[2]

In *Demore*, in upholding the constitutionality of detention under section 1226(c), the Supreme Court relied on the fact that there was a "very limited time of . . . detention at stake," noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*."  *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which aliens are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Barrie's 18-month detention far exceeds the four-month average cited in *Demore*.

---

[2] *See, e.g.*, *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").

The length of Barrie's detention therefore supports his argument that his detention

without an individualized hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention.  Whether "the facility for the

civil immigration detention is meaningfully different from a penal institution for criminal

detention" factors into the reasonableness of Barrie's detention.  *Sajous v. Decker*, 2018

WL 2357266, at *11 (S.D.N.Y. May 23, 2018).  "The more that the conditions under

which the alien is being held resemble penal confinement, the stronger his argument

that he is entitled to a bond hearing."  *Muse*, 2018 WL 4466052, at *5.

The government has submitted the declaration of a BFDF employee regarding

the conditions of Barrie's detention.  *See* Docket Item 4-3.  In that declaration, the

government avers that the facility is unlike a prison because "most persons . . are not

locked in a cell," they "do not face the same level of restrictions typical for someone held

at a prison," and they "ordinarily may move throughout the BFDF without being required

to wear handcuffs or legcuffs."  *Id.* at 3-4.  "Six of the dorm units are open-dorm style,"

but three others—for detainees with criminal histories or female detainees—have cell

doors that close at night.  *Id.* at 3.  And "persons held at BFDF [are] required to wear . . .

restraints . . . when being booked in or booked out" or when they are "facing discipline

[and are] brought to the Special Housing Unit ("SHU")."  *Id.* at 4.

Because of the cells, restraints, and discipline in the SHU, conditions at BFDF

certainly "resemble penal confinement" for at least some persons detained there.  *Muse*,

2018 WL 4466052, at *5.  And while the record contains no facts about the particular

conditions of Barrie's confinement, he may well have been locked in a cell because, as

the government repeatedly highlights, he has a criminal history.  *See, e.g.*, Docket Item

10

4 at 2-3; Docket Item 4-1 at 2-3; Docket Item 4-3 at 3.  So the government has not

shown that Barrie's detention is "meaningfully different from [detention in] a penal

institution."  *Sajous*, 2018 WL 2357266, at *11.  This factor therefore weighs in Barrie's

favor as well.

Third, courts consider whether the detainee has prolonged his own detention.

The Second Circuit has found that this factor weighs against finding detention

unreasonable when an alien has "substantially prolonged his stay by abusing the

processes provided to him" but not when "an immigrant . . . [has] simply made use of

the statutorily permitted appeals process."  *Hechavarria*, 891 F.3d at 56 n.6 (first quoting

*Nken v. Holder*, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has noted, "appeals

and petitions for relief are to be expected as a natural part of the process.  An alien who

would not normally be subject to indefinite detention cannot be so detained merely

because he seeks to explore avenues of relief that the law makes available to him."  *Ly

v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6).

Indeed,

> although an alien may be responsible for seeking relief, he is not
> responsible for the amount of time that such determinations may take.  The
> mere fact that an alien has sought relief from deportation does not authorize
> the [government] to drag its heels indefinitely in making a decision.  The
> entire process, not merely the original deportation hearing, is subject to the
> constitutional requirement of reasonableness.

*Id.*

Here, DHS took Barrie into custody on October 29, 2018, following completion of

his state incarceration.  Docket Item 4-1 at 4.  Barrie filed at least three motions to

adjourn his removal hearing, which eventually began on March 20, 2019.  *See* Docket

Item 4-2 at 42-44, 47.  The hearing continued on May 23, 2019.  *Id.* at 50.  Barrie then

requested two more extensions of time—first to submit additional evidence and second to secure an interpreter for his mother.  *See id.* at 50, 51.  Barrie also has appealed the IJ's decision to the BIA.  Docket Item 4-1 at 6.  Barrie therefore is accountable for some of the delay.

But so too is the government.  The IJ adjourned a scheduled July 25, 2019 hearing.  *See* Docket Item 4-1 at 6.  After the final hearing on September 17, 2019, the IJ did not issue a decision until December 11, 2019.  *See* Docket Item 4-2 at 54-71.  And the BIA has yet to decide Barrie's appeal.

Although Barrie has caused some of the delay in his removal, this Court does not find that he has "abus[ed] the processes provided to him."  *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436).  He has adjourned hearings to obtain counsel, submit evidence, and secure an interpreter.  Otherwise, he has done no more than challenge his removal and appeal the IJ's decision to the BIA.  The IJ and BIA collectively are responsible for the 9 months since July 2019.  Therefore, the third factor weighs in neither side's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  This Court declines to weigh the merits of Barrie's claims pending before the BIA.

After weighing all these factors, this Court finds that Barrie's detention has been unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

2.      **The Process Due to Barrie**

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the conclusion that Barrie's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Barrie's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity."  *Addington v. Texas*, 441 U.S. 418, 427 (1979).  Barrie has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint."  *Zadvydas*, 533 U.S. at 690.  Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Barrie has not conceded his deportability, and the resolution of that issue remains pending before the BIA.  In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest. Barrie claims that his child, mother, and sister are United States citizens. *See* Docket Item 1 at 5. These family members live not in Sierra Leone, where the government wishes to send him, but in the United States, where Barrie himself has lived for about twenty years. *See id.* at 4. Thus, if Barrie chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34.

This Court recognizes that the government's interest in detaining Barrie also may be strong. The government contends that Barrie's risk of flight and disregard for the law justify his continued detention. Docket Item 4-4. In fact, Barrie is detained under 8 U.S.C. § 1226(c), which applies to aliens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 837. "[A]liens detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[3] *Id.* at 846. Thus, in mandating the detention of criminal aliens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community. *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal aliens failed to appear for their removal hearings"[4]).

---

[3] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[4] The Court noted that this number included aliens who were released from custody *without* an individualized bond hearing. *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these aliens on bond, it is

"The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749.  And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty*, 943 F.2d at 211.

This Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to Barrie's liberty interests.  Section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he is, in fact, a danger or a flight risk.  *Jennings*, 138 S. Ct. at 846.  Now that Barrie's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted).  When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

---

not clear that *all* of the aliens released were in fact given individualized bond hearings." (emphasis in original)).

To sustain the prolonged detention of an alien subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding.[5]  This requires consideration of less restrictive alternatives to detention.  *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

Barrie's section 1226(c) detention has been unreasonably prolonged.  Because section 1226(c) does not require an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, it is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.  Barrie must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decision maker that Barrie's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or

---

[5] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

protecting others or the community.  The decision maker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

## IV.    EXCESSIVE BAIL CLAUSE

Barrie also argues that the "government's categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment."  Docket Item 1 at 13.  The Excessive Bail Clause requires "that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754.  Although detention of criminal aliens during removal proceedings for only a brief period without individualized findings after a hearing is not "excessive in relation to the valid interests the government seeks to achieve," *Sankara v. Barr*, 2019 WL 1922069, at *9 (W.D.N.Y. Apr. 30, 2019) (quoting *Galen v. Cty of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007)); *see Demore*, 538 U.S. at 519-21 (explaining Congress's interests in brief mandatory § 1226(c) detention), the same cannot necessarily be said "after unusual delay in deportation hearings," *Carlson v. Landon*, 342 U.S. 524, 546 (1952).  But because this Court has determined that due process requires that Barrie receive an individualized hearing, his claim that the Excessive Bail Clause requires the same result is moot.

## V.    REQUEST TO STAY REMOVAL

Finally, Barrie has asked this Court to stay his removal pending resolution of his claim before the BIA.  Docket Item 1 at 14.  The Real ID Act of 2005, 8 U.S.C. § 1252,

strips district courts of jurisdiction to review a final order of deportation.  *See De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007).  "[B]ecause district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal."  *Al-Garidi v. Holder*, 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009).  As it lacks jurisdiction, this Court denies Barrie's request to stay his removal.

## CONCLUSION

For the reasons stated above, Barrie's petition, Docket Item 1, is GRANTED IN PART and DENIED IN PART.  **Within 14 calendar days of the date of this decision and order**, the government must release Barrie from detention unless a neutral decision maker conducts an individualized hearing to determine whether his continued detention is justified.  At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Barrie's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention also would address the government's interests.  In other words, the decision maker must find that no condition or combination of conditions of release can reasonably ensure Barrie's appearance and the safety of the community—that is, even with conditions, Barrie presents an identified and articulable risk of flight or a threat to an individual or the community.

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that Barrie's request to order the respondents to stay his removal is DENIED; and it is further

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Barrie from detention unless a neutral decision-maker conducts an individualized hearing to determine whether his continued detention is justified by clear and convincing evidence that Barrie's continued detention serves a compelling regulatory purpose; and it is further

ORDERED that **within 30 days of the date of this decision and order**, the respondents shall file and serve an affidavit certifying their compliance with this order. That affidavit should include a written copy of the IJ's decision and, if available, a transcript of the hearing.


SO ORDERED.

Dated:       April 15, 2020
             Buffalo, New York


                                    _/s/ Lawrence J. Vilardo_
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE